UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY T. PRICE,

          Plaintiff,

v.

DON EDWARDS, ET AL.,

          Defendants.

          /

No. 17-10601

District Judge Nancy G. Edmunds
Magistrate Judge R. Steven Whalen

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION
## TO WITHDRAW FROM SETTLEMENT AGREEMENT

On February 24, 2017, Plaintiff Jeffrey Price filed a civil complaint in this Court against Richard Snyder (then-Governor of the State of Michigan), Kristie Etue (Director of the Michigan State Police), Don Edwards (Montmorency County Sheriff), and Vicki P. Kundinger (Montmorency County Prosecutor) in their official capacities only, alleging that he was wrongfully arrested and later forced to move from his own home for violations of the 2006 and 2011 amendments to Michigan's Sex Offender Registration Act ("SORA"), M.C.L. § 28.721 *et seq*.

The case eventually settled under terms that are reflected in a Memorandum of Understanding. Mr. Price signed and returned the Memorandum to the Court [Doc. #53]. On January 24, 2019, he filed a Motion to Withdraw from the Settlement Agreement [Doc. #59].

For the reasons discussed below, the motion is DENIED.

## I.    FACTS

On March 14, 2018, the Court, overruling objections to my Report and Recommendation [Doc. #32], granted in part the Defendants' motion to dismiss, dismissing Plaintiff's claim for monetary damages but permitting his claim for declaratory and prospective injunctive relief to go forward. *See Opinion and Order* [Doc. #42].

The parties then engaged in settlement discussions, and each side prepared proposed "final judgments" for discussion. On July 17, 2018, Mr. Price and the attorneys for Defendants participated in a telephone conference with the undersigned Magistrate Judge. Agreement on the terms of a settlement was reached, and the Court sent all parties a Memorandum of Understanding that reflected the agreement. A significant part of the settlement was the Defendants' agreement that the 2006 and 2011 amendments to SORA would not apply retroactively to Mr. Price, consistent with the Sixth Circuit's decision in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016).

The parties were instructed to each sign and return a copy of the Memorandum if they agreed with the terms. The Plaintiff signed and returned his copy, which was docketed on July 23, 2018 [Doc. #53].

The Memorandum of Understanding noted that the parties and/or their attorneys participated in a telephonic conference with the Court on July 17, 2018, "to discuss the terms of a possible settlement in this matter." The Memorandum stated, at pg. 1, that there

remained two areas of disagreement:

"While there was agreement on the majority of terms of a proposed settlement, there was nevertheless disagreement on two issues:

(1) Whether Plaintiff's registration under Michigan's SORA would be for a period of 25 years or for a period of life;

(2) Whether going forward, the Plaintiff would be obligated to pay the annual fees as set out in M.C.L § § 28.725a(6)(b)-(c) and 28.725b(3).

The Memorandum then enumerated, at pp. 2-3, the terms and issues that the parties had agreed upon. The following provisions are relevant Mr. Price's motion to withdraw from the agreement:

"It is the Court's understanding that the parties have agreed to settle this matter, *and stipulate to a judgment containing the following terms*:

(1) The Defendants, as well as their officers, agents, servants, and employees will not enforce the 2006 and 2011 SORA amendments against the Plaintiff.

(2) Plaintiff will be subject to the following registration and verification requirements, as long as the Stipulated Final Judgment remains in effect:

a.    Plaintiff will remain listed on the public registry.

b.    *The only requirements or restrictions of SORA that apply to Plaintiff are:*

*i. To verify quarterly. At quarterly verification he shall report (1) current residential address information and any name change (as set out in M.C.L §§ 28.724a(1) and (d)); and (2) quarterly reporting periods will be based on the birth-month schedule set forth in M.C.L. § 28.727(1)(q).*

*ii. to provide fingerprints if not already on file with the Michigan State Police (as set forth in M.C.L. § 28.727(1)(q).*

*iii.    to maintain a valid driver's license or state-issued*

*identification card.*

c.  The Defendants will make a notation within their registry computer application (to which the notation will not be viewable by the public) to alert law enforcement to contact the Michigan State Police before taking any action against Plaintiff on SORA-related offenses." *Memorandum*, p. 2 (Emphasis added).

The agreement continued:

"*In addition to the terms set forth in the proposed judgment, the proposed settlement includes an agreement that the following two issues will be decided by the Court, following briefing by the parties:*

*(1)   Whether Plaintiff's registration under Michigan's SORA would be for a period of 25 years of a period of life;*

*(2)   Whether going forward, the Plaintiff would be obligated to pay the annual fees as set out in M.C.L § § 28.725a(6)(b)-(c) and 28.725b(3).*

As part of the settlement, the District Court's decision on these issues will be binding on the parties, and neither party will take an appeal from the District Court's decision.

By their signatures to this Memorandum, the Plaintiff, and the Defendants, through their undersigned attorneys, acknowledge that it represents their understanding of the terms of the settlement of this matter, and that they accept those terms." *Id*. p. 3 (emphasis added).

On November 28, 2018, the Court entered a schedule for the parties to submit briefs on the two disputed issues, with the Plaintiff's brief due on January 4, 2019 [Doc. #54]. On January 3, 2019, Mr. Price filed a Motion for Extension of Time Pending the Outcome of the Telephonic Conference [Doc. #55], in which he sought to "resolve and/or correct fundamental flaws, serious legal matters contained within the settlement agreement and

memorandum of understanding." On January 10, 2019, the Court held a telephonic conference with Mr. Price and Defendants' attorneys, at which Mr. Price expressed a desire to withdraw from the agreement as it was set forth in the memorandum. The Defendants did not agree to withdrawal. On January 11, 2019, the Court entered an order holding the previous briefing schedule [Doc. #54] in abeyance and setting a schedule for the parties to file briefs on the issue of withdrawal/enforcement of the settlement agreement [Doc. #58].

In his motion to withdraw, filed on January 24, 2019, Mr. Price claims that he "felt pressured" to accept the agreement, and that the agreement itself is "fundamentally flawed."[1]

## II.    LEGAL PRINCIPLES

This Court has the equitable power to enforce a settlement agreement, *Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir.1988), that remedy being contained to cases where there is no dispute or ambiguity as to either the entry into, or the terms of the agreement. *Kukla v. National Distillers Products Co.,* 483 F.2d 619, 621 (6th Cir.1973). Thus, "[b]efore enforcing settlement, the district court must conclude that agreement has been reached on all material terms." *Brock,* 841 F.2d at 154. *See also Therma-Scan, Inc. v. Thermoscan, Inc.,* 217 F.3d 414, 419 -420 (6th Cir. 2000).

Once the parties have agreed on settlement, the strengths or weaknesses of their

---

[1] The motion to withdraw is found at Doc. #59, and the brief in support at Doc. #60.

respective litigation positions are beside the point. "Once concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment and the actual merits of the antecedent claims will not thereafter be examined." *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 283 (6th Cir. 1986).

"Settlement agreements are a type of contract and are therefore governed by contract law." *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir.1992). Therefore, "whether a settlement agreement is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *Id.* In Michigan (as in most, if not all American jurisdictions), "[t]he primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127 n. 28, 517 N.W.2d 19 (1994). The terms of a contract should not be read in isolation; instead, the agreement is read as a whole in order to determine the intent of the parties. *Michigan Twp Participating Plan v Pavolich*, 232 Mich.App 378, 383; 591 NW2d 325 (1998). *See also Hastings Mut. Ins. Co. v. Safety King, Inc*., 286 Mich. App. 287, 297, 778 N.W.2d 275, 281 (2009)("[C]ontract terms should not be considered in isolation and contracts are to be interpreted to avoid absurd or unreasonable conditions and results")(citing *Knox v. Knox*, 337 Mich. 109, 120, 59 N.W.2d 108 (1953)); *Kellogg Co. v. Sabhlok*, 471 F.3d 629, 636 (6th Cir.2006)("[C]ontracts must be construed consistent with common sense and in a manner that avoids absurd results")(citing *Parrish v. Paul Revere Life Ins. Co.*, 103 Mich.App. 95, 302 N.W.2d 332, 333 (1981)).

## III.   DISCUSSION

In his motion, Mr. Price states that he misunderstood what he was agreeing to, and felt pressured to accept the settlement agreement. *Brief in Support of Motion*, Doc. #60, Pg. ID 489.   He also asserts that the agreement is "fatally flawed" because he is "part of an unconstitutional amendment appl[ied] to him while other parts of an unconstitutional amendment do not and what parts either maybe." *Id*. Pg. ID 487.   In support, he proffers legal arguments regarding the scope and applicability of *Does #1-5 v. Snyder*.

First, Plaintiff's claim that he should be able to back out of his agreement because he felt "pressured" is without merit. "Under Michigan law it is presumed that a plaintiff executes a settlement agreement and release knowingly, and the plaintiff has the burden of proving otherwise." *Li v. Recellular, Inc*., 2010 WL 1526379, at *5 (E.D. Mich. Apr. 16, 2010), citing *Stefanac v. Cranbrook Educ. Cmty*., 435 Mich. 155, 164-65, 458 N.W.2d 56 (1990). The fact that Mr. Price did not have a lawyer has little significance.   "[T]here is no requirement that one be represented by independent counsel before committing to a binding contract." *Reed v. Reed*, 265 Mich.App. 131, 149, 693 N.W.2d 825 (2005); *see also Cochran v. Ernst & Young*, 758 F.Supp. 1548, 1556 (E.D.Mich.1991) ("In Michigan, an individual can settle a claim without the assistance of counsel.") (citing Michigan law)).   Moreover, the facts show that Mr. Price was not subject to undue pressure, but rather that he freely and actively participated in negotiating the settlement and had adequate time to reflect on his decision to accept the agreement.   Both he and the Defendants submitted proposed judgments

to the Court.  The parties discussed their differences during the July 17, 2018 telephonic conference, and were able to agree on all terms except for the two issues set forth at p.1 and p. 3 of the agreement. It was agreed that those two issues would be reserved for decision by the Court.  The Memorandum of Understanding was mailed to the Plaintiff, giving him time to read it, and to rethink its terms.  If he believed it was flawed, or was not in his interests, he did not have to sign it.  But sign it he did, and he returned it to the Court on July 23, 2018.  Yet he did not express a desire to withdraw until almost six months later, on January 3, 2019 one day before his brief on the two outstanding issues was due.  There was no external pressure, and his decision to settle the case under the terms contained in the agreement was knowing, intelligent, and voluntary.

Nor does Mr. Price's current belief that he would prevail on his legal arguments and obtain better relief provide a basis for withdrawing from the agreement.  As the Michigan Court of Appeals observed in *In re Frank M. Lambrecht, Jr.*, 2018 WL 4574750, at *4 (Mich. Ct. App. Sept. 20, 2018):

> "There is always the possibility that questions of fact or law will be answered after a settlement has been executed, and the would-be winning side may have buyer's remorse. Setting aside settlements under these circumstances would discourage settlements and the public policy favoring the finality of judgments."

Six months after he signed a settlement agreement, and one day before his brief on the two unresolved issues was due, Mr. Price developed a case of buyer's remorse. But a settlement agreement that has been reduced to writing and signed by all parties should not

be set aside merely because one party has a "change of heart." *Metropolitan Life Ins. Co. v. Goolsby*, 165 Mich.App. 126, 128–129, 418 N.W.2d 700 (1987).

Finally, in his reply brief [Doc. #64], Mr. Price offers an alternative interpretation of the agreement that he argues should bind the Defendants. Specifically, he points to the language in term 2(b)(i-iii), at p. 2, which states that "[t]he only requirements or restrictions of SORA that apply to Plaintiff" are quarterly registration, providing fingerprints, and maintaining a valid driver's license or state-issue identification card. He contends that this is a limiting clause that contractually relieves him of the duty to comply with any other provision of SORA, including the two provisions that the agreement reserved for later decision by the Court: lifetime registration and payment of annual fees.

Mr. Price's argument is too clever by half. There is no ambiguity in the settlement agreement, nor is there any doubt as to the intent of the parties in reaching the terms of a settlement. Again, in determining the intent of the parties, the terms of a contract are not considered in isolation, but rather the agreement is read as a whole. *Hastings Mut. Ins. Co.*, 778 N.W.2d at 281. At p. 1, the Memorandum of Understanding clearly states that "[w]hile there was agreement on the majority of terms of a proposed settlement, there was nevertheless disagreement on two issues," and delineates the two provisions of SORA that are still in dispute. Then, p. 3 of the Memorandum is equally clear that "*[i]n addition to the terms set forth in the proposed judgment*, the proposed settlement *includes an agreement* that the following two issues will be decided by the Court, following briefing by the parties...."

(Emphasis added).  The language in condition (2)(b) on which Mr. Price relies reflects the

SORA requirements, and by implication the restrictions, that the parties have agreed to

resolve.  It cannot be read in isolation to negate the clear language on p. 1 and p. 3 that two

disputed SORA requirements–the length of the registration period and the annual fees–would

be reserved for a non-appealable decision by the Court.  To accept Mr. Price's theory would

lead to an absurd result, and indeed would frustrate the clear intent of the parties. *Kellogg Co.*

*v. Sabhlok*, 471 F.3d at 636.  There is no basis for him to withdraw from the settlement

agreement.

## IV.  CONCLUSION

Plaintiff's Motion to Withdraw from the Settlement Agreement [Doc. #59] is

DENIED.[2]

Any objections to this Order must be filed within 14 of receipt thereof.  Fed.R.Civ.P.

72(a); E.D. Mich. LR 72.1(d).

IT IS SO ORDERED.

s/R. STEVEN WHALEN
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: August 21, 2019

---

[2] The Court will enter a separate scheduling order for briefing on the two issues set forth in the settlement agreement.